**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Darren Clark Green, | ) | Case No. 2:25-cv-09646-BHH-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| C.O. Googe, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Darren Clark Green ("Plaintiff"), a state detainee proceeding *pro se* and *in forma pauperis*, brings this civil action seeking relief pursuant to 42 U.S.C. § 1983. Under Local Civil Rule 73.02(B)(2) (D.S.C.), pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge. Before the Court is Defendant's Motion for Summary Judgment. (Dkt. No. 21.) For the reasons set forth below, the undersigned recommends Defendant's motion be granted.

## BACKGROUND

### A.    General Background

This civil action arises from an alleged inmate-on-inmate attack that occurred at the Sheriff Al Cannon Detention Center ("Detention Center") on March 27, 2025. (Dkt. No. 1.) In his unverified Complaint,[1] Plaintiff alleges he was attacked by another inmate in his cell after Defendant C.O. Googe "allow[ed] [his] door to be open by an inmate unauthorized to open [Plaintiff's] door, causing [Plaintiff] bodily injury." (*Id.* at 6.) According to Plaintiff, around 7:45pm, third party "C.O. Antolucchi[2] . . . decided to feed us room by room instead of letting us

---

[1] *See Goodman v. Diggs*, 986 F.3d 493, 495 (4th Cir. 2021) ("A complaint is verified if it is signed, sworn, and submitted under penalty of perjury.") (internal quotations omitted).
[2] The record shows the correct name for this individual is Deputy Angelucci. (Dkt. No. 21-1.)

1

out to eat." (*Id.* at 8.) Plaintiff alleges his "roommate started to kick and scream obscene gestures and comments." (*Id.*) Eventually, Plaintiff "came out and got [his] tray and gave it away because [he] lost [his] desire to eat." (*Id.*) Plaintiff then "went and got in the pill line where the C.O. Antolucci saw [him] third in line and immediately singled [Plaintiff] out being in line when there's people in front of" him. (*Id.*) Plaintiff alleges "we got into an argument alongside with the C.O. George." (*Id.*) Plaintiff alleges everyone was locked in their room after the "senseless argument" ended. (*Id.*) According to Plaintiff, "when it was time for rec, C.O. Googe the defendant let [his] roommate out for rec and placed [Plaintiff] on lock down." (*Id.*)

Plaintiff describes the next events as follows:

Around 5 minutes left to [sic] rec to be done with. An inmate who acts as a trustee [sic] helper came to my door and ask[ed] me about the towel he was supposed to give me because we exchange linein [sic] earlier that day. After I told him I'm good I'll wait to tomorrow, he tried to bribe me with a[n] extra tray. I told him I'm good I don't want to eat. At least 2 minutes passed and without my knowledge the C.O. Antolucci left the dorm because she's crying uncontrollably.

C.O. George open my door with clear knowledge that he locked me down and put a hit on me by blaming me for the C.O. Antolucci crying. Two inmates open my door none of which is my roommate. Two more inmates stood in front of my door watching while I'm waiting to be jumped. The inmate came in and started asking [what] was up with the situation. I explain to him I don't know. . . . As he kept inquiring about the facts he came in closer and punch me in my right eye knocking me half-way unconscious and grabbing my left foot and dragging me off the top bunk where I landed on daze [sic].

(*Id.* at 8–9.)

Plaintiff alleges no correctional officers came to his aid. (*Id.* at 9.) Instead, his roommate "finally came upstairs where the individual slapped him three times." (*Id.*) Plaintiff's alleged attackers left and five minutes later, "the tactical team came and arrested [Plaintiff] and took [him] to Behavior Management Unit ("BMU")." (*Id.*) According to Plaintiff, when two inmates "screamed 'get his ass out of here,'" Plaintiff saw C.O. George "laughing like he satisfied I was

2

sentenced to 15 days lockout." (*Id*.) Plaintiff alleges he "suffers migraines" and he "blacked out while in BMU." (*Id*.) Plaintiff alleges he continues to suffer headaches and dizziness and he fell out of bed on April 20, 2025, where he "blacked out and busted [his] face open." (*Id*.)

The Complaint states that Plaintiff brings the following claims: "14th Amendment Equal Due Process, Substantive Due Process, and Procedural Due Process. 4th Amendment deliberate indifference [and] failure to protect." (*Id.* at 6.) Plaintiff filed this action on August 5, 2025. On February 2, 2026, Defendant filed a Motion for Summary Judgment. (Dkt. No. 21.) The next day, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 22.) Plaintiff filed a response in opposition on March 4, 2026 (Dkt. No. 24), to which Defendant filed a reply brief. (Dkt. No. 25.) The motion has been fully briefed and is ready for review.

### B.    Evidentiary Background

In support of his Motion for Summary Judgment, Defendant relies on the March 27, 2025 incident report, body camera footage, Plaintiff's medical kiosk entries, and Plaintiff's grievance history. Plaintiff offers no evidence in support of his claims.[3] Because Plaintiff's Complaint is not verified, it does not constitute admissible evidence at summary judgment. *See Thompson v. Hartsfield*, No. 5:17-CT-3262-FL, 2020 WL 5709247, at *4 (E.D.N.C. Sept. 24, 2020) ("Plaintiff's unverified complaint is not competent summary judgment evidence."); *Huff v. Outlaw*, No. 9:09-

---

[3] In his response brief, Plaintiff asks the Court to "look at the camera that night I was in cell 4202 in front of the CO desk," states that his "medical notes would show I mention I was injured during the attack," and asserts his roommate "is a witness." (Dkt. No. 24 at 1, 4.) However, no such medical notes are in the record, and Plaintiff has not submitted any sworn statement or declaration from his roommate. Further, it does not appear Plaintiff sought to obtain the referenced camera footage during discovery. Notably, the Court previously notified Plaintiff that his response to Defendant's Motion for Summary Judgment must include verified evidence such as affidavits, declarations, or similar admissible evidence. (*See* Dkt. No. 22.)

3

cv-00520-RBH, 2010 WL 1433470, at *2 (D.S.C. Apr. 8, 2010) ("[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment.").

### 1.    Incident Report and Body Camera Footage

The record includes an incident report completed by third party Deputy Abigail Angelucci, referred to by Plaintiff as "C.O. Antolucci."  (Dkt. No. 21-1.) The incident report states,

> On 03/27/25 in A3K around 1955, I, DD Angelucci was conducting medication pass with MDD Googe, when room 4202 began pounding on their door, screaming to come out. Inmate Darren Green #1180808 screamed out the door calling me a "stank pussy bitch" and other profanities. Because we still had to feed both inmates in that room and allow them to take medication, MDD Googe opened their door for them to come down. Inmate Green came out the room threatening MDD Googe stating, "I am in here on 4 attempted murders and I will add another one, I'm about to go home and will get back for that Dillon Roof shit," several times. I saw Inmate Green was frustrated, so I asked him what was wrong. Immediately, he began screaming and cursing at me, saying things like "I got something for you, you fucking bitch" and "I put people six feet under, you better watch yourself". The threats continued, even when I stopped entertaining him. Nurse Mack, DD Googe, and other inmates heard these threats. Inmate Green continued his tirade stating,  I will get you for that Dillon Roof shit. Fuck you, you stupid bitch," amongst other threats. He attempted to intimidate me by lunging forward at the desk by the med cart and screaming then continued to make threats and insults directed at me. Once all the yelling and threatening stopped, he went back to his room. For safety reasons, I did not let Inmate Green out for recreation. My body worn camera was activated during the entire situation.
>
> For threatening myself and MDD Googe, Inmate Green is being charged with the following ...
>
> 0-4: Verbal abuse towards staff. Flagrant demeaning comments directed at staff, to include civilian staff and visitors
>
> R-12: Threatening or intimidating staff to include extortion or blackmail for any reason or attempting to control staff behavior through force
>
> He will be relocated to BMU to await his disciplinary board hearing.

(*Id.* at 1.) The incident report includes a supplement indicating Plaintiff was sanctioned to 15 days in BMU based on the charges stemming from the March 27, 2025 incident. (*Id.* at 2.)

4

Defendant has submitted footage from a body camera, apparently worn by Deputy Angelucci, which is consistent with the version of events recounted in the incident report. (*See* Dkt. No. 21-2, 13:00-15:55.)

**2.    Plaintiff's Medical Kiosk Entries and Grievance History**

Defendant has submitted Plaintiff's medical kiosk entries dated from November 10, 2024 through June 7, 2025. (Dkt. No. 21-4.) The medical kiosk entries do not mention an attack on March 27, 2025. The first medical grievance submitted by Plaintiff after this alleged incident occurred on April 20, 2025, wherein Plaintiff stated, "I black out last night and fell on my face and busted my mouth really bad. I may have pushed my tooth in my gums. Can you take a look for me please? (*Id*. at 15.)

Defendant has also submitted an affidavit from Lt. Justin Kitchings, a Detention Deputy who oversees and monitors "the inmate grievance process" at the Detention Center. (Dkt. No. 21-5.) Kitchings has provided Plaintiff's grievance relating to this lawsuit, which shows the following:

> 4/29/2025 12:36:36 AM
> ORIGINAL REQUEST: I was sent to BMU 3/27/25. I was accused of making C.O Antolucci cry. C.O Googe allowed inmates to gang me after he took my rec for the night. He open my door allowing inmates to gang me leaving with injuries. 5-10 later I was sent to BMU. I was denied a grievance. Since then I past out numerous times. I'm in informing [sic] you to let you know. I don't expect anything because I have no rights.

> 4/30/2025 11:57:31 AM
> CLOSED: At what time were you assaulted? Can you provide more information as to why you believe the Deputy deliberately opened your door for you to be assaulted? What inmates assaulted you specifically? This matter will be looked into.

> 5/20/2025 11:45:42 AM
> INMATE APPEAL: I told you the date already. They blamed me for making the lady cry and since she's a female the C.O got me jump!! I don't know the inmates. I asked for grievances and was denied in BMU where I black out numerous times until I had a panic attack its going on 3 months if you try to do anything I can't expect you now!! You could of been look at the cameras when I told you then!!!

8/8/2025 10:11:05 AM
CLOSED.

(Dkt. No. 21-8.)

In his affidavit, Kitchings summarizes the grievance policy at the Detention Center. He states that the Detention Center grievance policy "requires that an inmate will submit his/her grievance within the timeframes established within the policy. The grievance must be submitted within five (5) working days of the grievable event." (Dkt. No. 21-5 at 2.) "A Supervisor will then attempt to resolve the Grievance and if unsuccessful, will forward the Grievance up the chain-of-command to the Division Captain for resolution. After the inmate receives notice of the decision of the Grievance, they have five (5) days to appeal to the next level of command, to the Detention Center Majors." (*Id*. at 3.) "If the inmate is not satisfied with the resolution of the Major, the inmate may appeal to the Detention Chief Deputy within five (5) working days for resolution. The Detention Chief Deputy's decision is the agency's final decision." (*Id*.)

In reference to Plaintiff's relevant submitted grievance, Kitchings avers that "Plaintiff's Grievance was untimely, he failed to cooperate with Deputies in providing them sufficient information to investigate the allegations, and he further was untimely on filing his appeal." (*Id*. at 4.) Kitchings avers that Plaintiff "did not completely follow the Grievance Procedure and therefore did not properly exhaust the administrative remedies available to him." (*Id*. at 3.)

## **STANDARDS**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g*

6

*Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In ruling on such a motion for summary judgment, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). Although the Court must "draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Sandlands C & D LLC v. Cty. of Horry*, 737 F.3d 45, 54 (4th Cir. 2013) (citing *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Combs v. Giddens*, No. 3:20-cv-563, 2023 WL 3352193, at *1 (E.D. Va. May 10, 2023 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## **DISCUSSION**

In his Motion for Summary Judgment, Defendant argues: (1) Plaintiff's § 1983 failure to protect claim fails as a matter of law; (2) Defendant is entitled to qualified immunity; (3) Plaintiff has failed to exhaust his administrative remedies; and (4) Defendant is immune from liability under

the South Carolina Tort Claims Act ("SCTCA"). (Dkt. No. 21.) Plaintiff opposes Defendant's motion. (Dkt. No. 24.)

### A.     § 1983 Failure to Protect Claim

As noted above, the Complaint states that Plaintiff brings the following claims: "14th Amendment Equal Due Process, Substantive Due Process, and Procedural Due Process. 4th Amendment deliberate indifference [and] failure to protect." (Dkt. No. 1 at 6.) However, based on the underlying allegations and Plaintiff's briefing, the undersigned construes Plaintiff's § 1983 claim solely as one for failure to protect.[4] More specifically, the Complaint summarizes Plaintiff's § 1983 claim as follows: "C.O. Googe violated my 14th amendment deliberate indifference failure to protect [by] allowing my door to be open by an inmate unauthorized to open my door, causing me bodily injury." (*Id.* at 6.) Likewise, in his response brief, Plaintiff states that Defendant violated Plaintiff's constitutional rights under the "Fourteenth Amendment to the Constitution of the United States by. . . allowing an unauthorized inmate inside my cell when he was supposed to open my

---

[4] For this reason, Defendant's argument that he is immune from liability under the SCTCA is inapplicable here, where Plaintiff has not alleged any state law claims. And, assuming arguendo, Plaintiff attempts to bring a § 1983 claim for deliberate indifference to his serious medical needs against Defendant, such a claim fails. By Plaintiff's own account in his briefing, once in BMU, he "informed the C.O. on duty at the time," and a nurse then came. (Dkt. No. 24 at 2.) Plaintiff alleges he was given Tylenol and had a CT scan on March 31, 2025. (*Id.*) Plaintiff does not allege, nor does the evidence indicate, Defendant did anything "objectively unreasonable" with respect to Plaintiff's medical treatment. *See Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (to establish a claim for deliberate indifference to medical need, a pretrial detainee must show that (1) he had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had the condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed); *Prigg v. Baltimore Cnty. Dep't of Corr.*, No. DLB-23-cv-48, 2024 WL 1012885, at *8 (D. Md. Mar. 8, 2024) (dismissing claim for deliberate indifference to pretrial detainee's medical needs where plaintiff "does not allege that [defendant] did anything 'objectively unreasonable'"). Similarly, Plaintiff does not allege, nor does the evidence support, finding any cognizable § 1983 claims based on an equal protection violation, substantive due process violation, or procedural due process violation. *See, e.g., Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."); *Davis v. Madisen*, No. 8:25-CV-2548-JDA-WSB, 2025 WL 3557758, at *5 (D.S.C. June 20, 2025) ("To the extent Plaintiff is attempting to challenge the findings at a prison disciplinary hearing, any such claims are not cognizable under § 1983."), *adopted by*, 2025 WL 3204564 (D.S.C. Nov. 17, 2025).

door with the key [and] subjecting me to objectively substantial risk of serious harm where I suffered injuries." (Dkt. No. 24 at 4.)

Before analyzing the merits of this § 1983 claim, the undersigned sets forth the relevant legal standards.

### 1.      Legal Standards

A pretrial detainee's claim for failure to protect arises under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Brown v. Harris*, 240 F.3d 383, 388-90 (4th Cir. 2001) (applying *Farmer* to a pretrial detainee's failure to protect and medical claims); *Hammock v. Watts*, No. TDC-22-cv-0482, 2023 WL 2457242, at *6 (D. Md. Mar. 10, 2023) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). To state a claim for failure to protect from attack by another detainee, a pretrial detainee first must show an objectively "serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Prigg v. Baltimore Cnty. Dep't of Corr.*, No. DLB-23-cv-48, 2024 WL 1012885, at *5 (D. Md. Mar. 8, 2024) (quoting *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014)). This inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id*. (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

A pretrial detainee then must show that the injury resulted from the defendant's action or inaction, and that the governmental action he challenges is not rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to that purpose. *Id*. (citing *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023)). Defendants must have "intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed." *Short*,

9

87 F.4th at 611. In other words, the plaintiff must establish that the defendant's action or inaction was "objectively unreasonable." *Id.* (quoting *Kinglsey*, 576 U.S. at 397); *see Hammock v. Andoh*, No. 22-cv-7159, 2024 WL 33694, at \*1 (4th Cir. Jan. 3, 2024) (In *Short*, the Fourth Circuit "held that a pretrial detainee's failure-to-protect claim must be evaluated under an entirely objective standard.").

Under this standard, "the plaintiff [need not] show that the defendant had actual knowledge of the [condition at issue] and consciously disregarded the risk that their action or failure to act would result in harm." *Id*. Instead, "it is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id*. (quoting *Farmer*, 511 U.S. at 836). It is not enough, however, "for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.*

### 2.      Analysis

Upon careful review, Plaintiff has failed to present sufficient evidence to survive summary judgment on his § 1983 failure to protect claim. As discussed *supra*, the Detention Center has no record of an assault on March 27, 2025. Rather, an incident report was completed that evening stating Plaintiff threatened both Defendant and third-party Deputy Angelucci, and Plaintiff was charged and placed in BMU because of this incident. (Dkt. No. 21-1.) In his medical kiosk entries following the incident, Plaintiff does not mention any assault. (Dkt. No. 21-4.)

In support of his claims, Plaintiff relies entirely on his unverified allegations that Defendant "placed [Plaintiff] on lockdown" when it was time for recreation, and then later "open[ed] [Plaintiff's] door with clear knowledge that he locked [Plaintiff] down and put a hit on [Plaintiff] by blaming [Plaintiff] for the C.O. Antolucci crying." (Dkt. No. 1 at 8–9.) As an initial matter,

Deputy Angelucci's incident report makes clear that she, not Defendant, "did not let Inmate Green out for recreation" for "safety reasons." (Dkt. No. 21-1 at 1.) Further, the Complaint offers somewhat conflicting accounts of Defendant's conduct. In it, Plaintiff alleges first that Defendant "allow[ed] my door to be open by an inmate unauthorized to open my door," and then later that Defendant "open[ed] my door." (Dkt. No. 1 at 6, 9.)

"As the nonmoving party, Plaintiff[ ] must . . . produce specific facts showing that there is a genuine issue for trial." *Perez v. Arnold Transportation*, C/A No. 3:15-cv-3162-TLW, 2018 WL 2301850, at *3 (D.S.C. Feb. 12, 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Plaintiff[ ] may not rest on mere allegations or denials; [he] must produce 'significant probative evidence tending to support the complaint.'" *Id*. (quoting *Celotex*, 477 U.S. at 248). Here, Plaintiff relies only on his unverified Complaint and offers no sworn testimony or other evidence to support his claims. Because Plaintiff has failed to present "probative evidence" indicating Defendant allowed Plaintiff to be attacked by other inmates in his cell on March 27, 2025, the undersigned recommends Defendant is entitled to summary judgment on Plaintiff's § 1983 failure to protect claim. *See*, *e.g.*, *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) ("conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion"); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (noting "neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)); *Vaden v. Enochs*, No. 7:21-cv-00155, 2022 WL 520804,

11

at *4 (W.D. Va. Feb. 22, 2022) ("[Plaintiff] cannot rest on unsupported statements in his brief to create a genuine dispute of fact."); *see also Young v. Dyer*, No. 7:23-cv-00206, 2025 WL 961702, at *6 (W.D. Va. Mar. 31, 2025) (granting summary judgment on *pro se* plaintiff's failure to protect claim because "no reasonable jury could find that [defendants] . . . knew of, yet disregarded, a substantial risk to [plaintiff's] health and safety").

Alternatively, because he is a government official, Defendant is entitled to qualified immunity from civil damages so long as his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, Defendant is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, because Plaintiff has not demonstrated that Defendant violated his constitutional rights, Defendant likewise is entitled to a finding of qualified immunity.

### C.    Exhaustion

Defendant also argues that Plaintiff has failed to exhaust his administrative remedies with respect to his constitutional claim in this action. (Dkt. No. 21 at 4–8.) Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative

procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516 (2002).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "Failure to exhaust is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion." *Baxley v. Jividen*, 508 F. Supp. 3d 28, 46 (S.D.W. Va. 2020) (citation and internal quotation marks omitted). "However, if a defendant makes a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to the plaintiff." *Id.* (citation and internal quotation marks omitted).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross v. Blake*, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) the "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." 136 S.Ct. 1850, 1853–54 (2016).

As discussed above, Defendant has presented affidavit testimony indicating that Plaintiff failed to exhaust his administrative remedies because "Plaintiff's Grievance was untimely, he

13

failed to cooperate with Deputies in providing them sufficient information to investigate the allegations, and he further was untimely on filing his appeal." (Dkt. No. 21-5 at 4.) The record shows Plaintiff submitted a grievance about the underlying incident on April 29, 2025. (Dkt. No. 21-8.) The Detention Center responded to his grievance the next day, asking for more information in order to investigate the incident. (*Id.*) Plaintiff waited until May 20, 2025 to file an appeal. (*Id.*)

In his briefing, Plaintiff argues that he was not "allow[ed] . . . to use the kiosk to file a grievance" while in BMU. (Dkt. No. 24 at 2.) Plaintiff claims he "asked C.O. Fisburce, Raul, Santos and Austerio Jr." and none of them allowed him to use the kiosk. (*Id.*) Plaintiff states he was in BMU until April 17, 2025, and then he "blacked out" on April 19, 2025, and was in the infirmary until April 29, 2025. (*Id.* at 3.) Even crediting these unverified allegations, Plaintiff offers no explanation for his delay in appealing the initial response to his grievance. Given Plaintiff's untimely appeal, the undersigned recommends Defendant is also entitled to summary judgment based on Plaintiff's failure to exhaust his administrative remedies. *See Johnson v. Ozmint*, 567 F. Supp. 2d 806, 815–16 (D.S.C. 2008) (granting summary judgment on the plaintiff's § 1983 claims for failure to exhaust his administrative remedies with respect to those claims); *see also Pozo*, 286 F.3d at 1024 (an inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983").

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that Defendant's Motion for Summary Judgment (Dkt. No. 21) be GRANTED.

IT IS SO RECOMMENDED.

May 28, 2026

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

14

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).